**Dated: May 30, 2008**

**The following is ORDERED:**



Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

**TRENTON J. BALDWIN** and             Case No. 04-72919

**CAROLYN S. BALDWIN,**             Chapter 7

            Debtors.

**GERALD R. MILLER, Trustee**

            Plaintiff,

vs.             Adv. No. 06-8165

**BILL AND CAROLYN LIMITED PARTNERSHIP,**
**an Oklahoma limited partnership,**
**THE MAXIE O. "BILL" BAILEY LIVING TRUST,**
**MAXIE O. "BILL" BAILEY, Trustee**,

            Defendants.

<u>**OPINION**</u>

      This adversary proceeding came on for trial before this Court on the 24th and 25th

days of March, 2008. Appearances were entered by Drew D. Webb and Ross A. Plourde,

attorneys for Plaintiff Gerald Miller, Trustee, and Charles E. Wetsel, attorney for the

Defendants Bill and Carolyn Limited Partnership, The Maxie O. "Bill" Bailey Living Trust, and Maxie O. "Bill" Bailey. After reviewing the evidence and testimony, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed. R. Bankr. P., in this core proceeding.

## **FINDINGS OF FACT**

Debtors Trenton J. Baldwin and Carolyn S. Baldwin filed a Chapter 7 bankruptcy proceeding on August 3, 2004. Plaintiff Gerald Miller, Trustee ("Trustee") commenced an adversary proceeding on December 7, 2004, Adv. No. 04-7126, seeking declaration of his rights to partnership interests owned by Debtor Carolyn Baldwin, and dissolution of the partnership in which she held an interest. This Court entered an Order on November 15, 2005, finding that the Trustee stepped into the shoes of Debtor Carolyn Baldwin with respect to her interest in the Bill and Carolyn Limited Partnership and directed that the Partnership be dissolved. On appeal, the Bankruptcy Appellate Panel ("BAP") affirmed this Court's decision that Carolyn Baldwin's partnership interests became property of her bankruptcy estate to which the Trustee succeeded, but reversed this Court's order dissolving the partnership. *Miller v. Bill and Carolyn Limited P'ship (In re Baldwin)*, No. EO-05-114, 2006 WL 2034217 (B.A.P. 10th Cir. July 11, 2006).[1] Although the BAP Order provided that the Trustee had no present right to force dissolution of the Partnership or liquidation of its assets, it did note that one of Carolyn Baldwin's rights under the Limited Partnership Agreement to which the Trustee succeeded included a right to withdraw from

---

[1]This decision in now on appeal to the Tenth Circuit Court of Appeals (No. 06-7083), but further proceedings in that appeal have been stayed pending a decision in this Adversary.

Case 06-08165    Doc 73    Filed 05/30/08    Entered 05/30/08 14:56:05    Desc Main
Document    Page 2 of 23

the Partnership pursuant to § 16.[2]

Trustee commenced this adversary proceeding on October 18, 2006. He seeks to enforce his right to purchase Defendant's, The Maxie O. "Bill" Bailey Living Trust's, one percent (1%) general partnership interest in the Defendant Limited Partnership, or, in the alternative, seeks a determination from this Court regarding the withdrawal provision of the Limited Partnership Agreement, as well as a declaration of his rights pursuant to that Agreement. Defendants argue that Trustee has misinterpreted the terms of the Limited Partnership Agreement, and that the Trustee may not withdraw from the Limited Partnership by selling his interest or buying the Trust's interest.

The parties have agreed to the following stipulated facts, which the Court includes as part of its Findings of Fact.[3] These stipulated facts are as follows:

**A.**   **Stipulated Facts**

1.    Defendant Bill and Carolyn Limited Partnership ("Partnership") was formed through a Limited Partnership Agreement ("Limited Partnership Agreement") dated August 25, 1994, between Defendant Maxie O. "Bill" Bailey Living Trust ("Trust") and defendant/debtor Carolyn S. Baldwin.

2.    Under the Limited Partnership Agreement, defendant/debtor Carolyn S. Baldwin initially owned a 7.73993% "Class C" limited partnership interest, and the Trust initially owned a 1% "Class A" general partnership interest and

_____

[2]*Miller*, 2006 WL 2034217, at *2 n6.

[3]References to exhibits have been omitted from the Stipulated Facts. The Court also notes that the Stipulated Facts erroneously refer to Debtor Carolyn S. Baldwin as a defendant in this adversary. She was a defendant in the previous adversary, 04-07126, but is not a defendant in this proceeding.

3

a 91.26007% "Class B" limited partnership interest.

3.  On or about September 15, 1994, the Trust, through its trustee, defendant Maxie O. "Bill" Bailey ("Bailey"), made an Assignment of Limited Partnership Interest ("Assignment"), under which the Trust conveyed the Trust's 91.26007% "Class B" limited partnership interest to defendant/debtor Carolyn Baldwin.

4.  After the Assignment, in addition to her initial 7.73993% "Class C" limited partnership interest, debtor Carolyn Baldwin also owned a 91.26007% "Class B" limited partnership interest in the Partnership ("Transferred Interest').

5.  Under 11 U.S.C. § 541(a)(1), the bankrupt debtor's estate ("Estate") includes the 99% limited partnership interest in the Partnership composed of the Class B and Class C limited partnership interests owned by debtor Carolyn Baldwin at the time Debtors commenced this action.

6.  Pursuant to Section 16.1 of the Limited Partnership Agreement, Trustee's counsel delivered a letter dated August 30, 2006 ("Withdrawal Letter").

7.  The Trust responded to the Withdrawal Letter with a letter dated September 25, 2006 from Charles Wetsel, counsel for the Trust ('Response Letter').

**B.** **Additional Findings of Fact**

The Trustee's Withdrawal Letter gave notice of his intent to withdraw from the Partnership effective thirty-one days from the date of the offer, and included an offer to purchase the Trust's 1% interest in the Partnership for the total sum of $ 3,000, payable immediately in cash. As an alternative to his offer to purchase the Trust's 1% interest, the Trustee offered to sell the Bankruptcy Estate's 99% limited partnership interest of Debtor

4

Carolyn Baldwin ("Mrs. Baldwin") to the Trust for the total sum of $297,000, payable immediately in cash. The Response Letter from Mr. Wetsel included a denial of the Trustee's request to withdraw, and stated that a partner wishing to withdraw was only entitled to a return of that partner's capital contribution, which was stated to be $ 20,000. The Response Letter also stated that an offer to sell a partner's interest could only be made when the offer is from a third party, which the Trustee was not, and the partnership would have a right of first refusal. The Letter concluded by stating, "[W]e do not understand your offer as being an offer to sell the Bankruptcy Trustee's interest in the family limited partnership."

For two days, the Court heard arguments and received the testimony of five witnesses regarding the creation, purpose, interpretation, and valuation of the Partnership. Three of these witnesses testified as experts on various subjects, but the focus of their testimony was on the withdrawal provisions in §§ 16.1 and 16.2 of the Limited Partnership Agreement, and the value of the respective partner's interest in the Partnership. Mr. Armand Paliotta testified on behalf of the Trustee as an expert on the general and customary use of provisions in limited partnership agreements. He is an attorney in private practice who specializes in business transactions and the preparation of partnership agreements. He serves on the Oklahoma Securities Commission, and has taught business planning courses at the University of Oklahoma and Oklahoma City University. Mr. Paliotta described § 16.1 as a standard buy-sell provision found in limited partnership agreements. It is one of several types of clauses that could be used in a limited partnership agreement for the sale of a partner's interest in the partnership. This particular provision allows one partner to make an offer to buy another partner's interest, but forces the offering partner

5

to make that offer using fair terms because the party receiving the offer is allowed to buy out the offeror's interest using the same terms. The advantage of this type of provision is that it avoids a third party appraisal, saving both time and money. Mr. Paliotta noted that "partner" is defined in § 6.2 to be either the general or limited partner, therefore either type of partner may make an offer in a notice of withdrawal under § 16.1. It was Mr. Paliotta's opinion that the Trustee's Withdrawal Letter strictly complies with the buy/sell provisions of § 16.1 of the Limited Partnership Agreement.

Mr. Paliotta also stated that § 16.1 clearly contemplates a situation such as the one before this Court where a partnership consists of only two partners, and one of the two partners desires to withdraw by offering to buy the other partner's interest or sell its interest to the other partner. This is because there were only two partners, Bailey and Mrs. Baldwin, when the Limited Partnership Agreement was drafted and signed. He stated that § 16.1 could not have intended to mean only non-partners making an offer, rather than partners, because that scenario is covered in another paragraph of the Limited Partnership Agreement, § 14.2. He did not believe that the Trustee is considered a third party to this Partnership because he succeeded to the interests of a partner, Mrs. Baldwin.

Contrary to the Defendants' assertions, Mr. Paliotta did not interpret the Trustee's withdrawal as a forced liquidation, which is beyond the powers of a limited partner. Liquidation is merely an option available to the non-withdrawing partner who does not wish to accept the offer to purchase its share nor wants to purchase the offering party's share of the Partnership. Mr. Paliotta also disagreed with Defendants' view that the withdrawal provision only applies where the partners own equal interests in the Partnership. He noted that the language of § 16.1 does not contain this requirement and the parties did not have

6

equal interests in the Partnership at formation. None of the other sections of the Limited Partnership Agreement restrict the rights of a partner to withdraw under §16.1. Section 7.7 is simply a general provision to prevent any partner to force a withdrawal or liquidation by withdrawing or reducing its capital contribution, not a prohibition on withdrawals by partners.

Mr. Paliotta explained that there are different classes of ownership in the Partnership, each having different rights, primarily regarding distributions upon dissolution or liquidation (§ 15.3.4) or cash-flow payment (§ 7.1). However, there is no difference in terms of control of the Partnership between Class B and Class C limited partnership interests. The Class A General Partner has the right to manage and control the Partnership (§ 12.1), subject to certain limitations outlined in § 12.5.

The Court also heard the expert testimony of the drafter of the Limited Partnership Agreement, Mr. Rodney Glenn Teague, a tax and estate planning attorney. Mr. Teague estimated that he has drafted hundreds of similar limited partnership agreements. A family limited partnership was used by Bailey to ensure that property would be passed to Mrs. Baldwin, and it was but one part of a large estate plan with goals of minimizing taxes and preserving assets for Mr. Bailey's children. Therefore, Mr. Teague urged that the Limited Partnership Agreement be read as a whole and interpreted to give effect to the goals of the Bailey's estate plan. He interprets the Limited Partnership Agreement as prohibiting the limited partner from withdrawing from the Partnership or demanding dissolution of the Partnership. Should a dissolution occur, Mr. Teague stated that the limited partner could only receive its contribution to the Partnership. Therefore, the only rights Mrs. Baldwin possessed were to receive her capital contribution back upon

7

dissolution of the Partnership, and to receive the remainder of the partnership interest upon the death of the Baileys. He stated that it was never intended that §§ 16.1 and 16.2 would be used. However, the sections were included in the event Mrs. Baldwin wanted to withdraw, so that her buy/sell offer would be on identical terms, not percentages of ownership. Mr. Teague stated that Mrs. Baldwin had no involvement in drafting the Limited Partnership Agreement. Mr. Teague advised the Court many times that the goal of this Partnership was for Bailey to retain complete control of the property, in spite of the boiler plate language to the contrary in the Limited Partnership Agreement.

Mr. Teague disagreed with Mr. Paliotta's interpretation of § 16.1. The effective result of a notice of withdrawal under any of the three options Mr. Paliotta identified (offer to buy, offer to sell, or liquidation) would be dissolution of the Partnership, a power not otherwise available to a limited partner . Mr. Teague admitted that the Limited Partnership Agreement did not prohibit the general partner from assigning an interest to a third party, thus avoiding dissolution after a notice of withdrawal, but Mr. Teague stated that a general partner would never do that because this Partnership was an estate planning tool. The Baileys never intended that there be any other partners other than themselves and Mrs. Baldwin, nor contemplated a situation involving the bankruptcy or divorce of a partner.

Regarding the Trustee's offer to buy the Bailey Trust interest, Mr. Teague testified that it did not comply with the terms of the Limited Partnership Agreement because it was not made on "identical terms." He interpreted § 16.1 as including two parts, a "buy" provision and a "sell" provision. The "buy" provision includes the separate phrases "stated terms" and "stated amount," with "stated terms" meaning everything but the dollar amount. The "sell" part of that section does not include these separate phrases, but only requires

8

that an offer to sell the Withdrawing Partner's interest must be on "identical terms," which means both the terms and the price as referred to in the "buy" provision. Because the Trustee's Withdrawal Letter offered to purchase the Trust's 1% interest for $ 3,000, "identical terms" had to be used to sell Mrs. Baldwin's 99% interest. Therefore, the Trustee had to sell her interest for $ 3,000.

Mr. Teague reiterated that the intent of § 16.1 was merely to allow Mrs. Baldwin to get back her capital contribution, but no more than that. He further stated that the assignment on September 15, 1994, of a 91.26007% limited partnership interest to Mrs. Baldwin did not entitle her to an increased return of her capital contribution, even though the language of that Assignment states that she "shall be entitled . . . to the return of an appropriate portion of the contributions to the capital of the partnership . . . ." He admitted that there was no requirement that § 16 or a similar type of provision be included in a limited partnership agreement, that he could have omitted it from the Limited Partnership Agreement, and that the provision did not prevent a limited partner from making an offer to buy or sell, as long as the price was not based upon percentage of interest owned by the partners. However, if the Remaining Partner chooses to terminate and liquidate the Partnership pursuant to § 16.2, liquidation would proceed under § 15.3, and would be based upon partnership percentage.

The Defendant, Maxie O. "Bill" Bailey, Trustee of The Maxie O. "Bill" Bailey Living Trust, testified that the Trust is the general partner of the Partnership. His daughter, Mrs. Baldwin, has never participated in the management or control of the Partnership. His sole purpose in creating this Partnership was to move property out of his estate, thus reducing his estate taxes. He hired Mr. Teague to prepare and implement his estate plan upon the

9

recommendation of his insurance agent. Mr. and Mrs. Bailey intended to retain control over the assets while alive, but shift those assets to their children to avoid estate tax. Mr. Bailey estimated that the value of the real estate owned by the Partnership was approximately $500 an acre. Although there is some highway frontage property, which may be worth a higher price per acre, that property is minimal.

Mr. David Payne provided expert testimony regarding the value of the Partnership and the reasonableness of the price of the Trustee's offer to buy or sell. Mr. Payne is an experienced appraiser and has served as a bankruptcy trustee in some large chapter 11 cases. At the Defendants' request, he provided an extensive written appraisal report to the Court regarding the value of the Partnership. In completing his report, Mr. Payne conducted the same analysis that he does when he values assets for an estate or gift tax return, and considers three things: (1) the value and nature of the underlying assets of the partnership, (2) the economic rights of holding the general or limited partnership interests, such as rights to distribution and rights to share in proceeds, and (3) the value of the legal attributes of the partnership agreement, such as the right to withdraw, to partition the assets, and share in proceeds. He also relied upon certain provisions of the Internal Revenue Code regarding methods of valuation for family limited partnerships. The assets owned by this Partnership are Mrs. Baldwin's residence and approximately one acre that the residence is on, plus the surrounding land of approximately 207 acres. There is a mortgage for approximately $140,000 on some portion of the property. Mr. Payne did not perform a full appraisal of the real property, but he did review photos and previous appraisals of the property.

Mr. Payne stated that valuation of a partner's interest in a partnership is not based

Case 06-08165    Doc 73    Filed 05/30/08    Entered 05/30/08 14:56:05    Desc Main
Document      Page 10 of 23

solely on the value of the partnership's assets. He also considered the right to control the Partnership, and the rights to dissolve and liquidate the Partnership in valuing each partner's interest. Thus, a general partner's interest would be more valuable than a limited partner's because of a general partner's greater rights to control and manage the Partnership. However, he disregarded § 16.1 in valuing the interests of the partners because he did not consider that it included any rights worth valuing in appraising the interests of the partners and value of the Partnership.

Mr. Payne referred to § 16.1 as a "shotgun" provision, which attempts to value the general partner's interest the same as a limited partner's. He confirmed Mr. Paliotta's testimony that these provisions are used to avoid appraisals. "Shotgun" provisions are typically found within only one class of ownership interest in a partnership. Where more than one class of ownership interest exists in a partnership, however, shotgun provisions do not work, he said, because different classes have different rights and powers and, thus, different values. He also stated that general partners generally do not enter into this type of agreement because their rights are inherently disparate from a limited partner's interest, and this provision does not account for that difference. Allowing the limited partner to buy or sell its interest defeats the purpose of forming a family limited partnership. From a valuation standpoint, he stated that § 16.1 is contrary to §§ 7.7 (no priorities of partners), 15.1 (dissolution), and 19 (right to partition Partnership property).

In Mr. Payne's opinion, the Withdrawal Letter from the Trustee included valuations of each partner's interest that are inherently unfair, and would likely result in a dissolution of the Partnership. He believes that "identical terms" does not necessarily imply the same price per percentage of ownership because other provisions in the Limited Partnership

11

Agreement use different methods of valuation. Mr. Payne admitted, however, that he could not disagree with Mr. Paliotta's legal interpretation of § 16.1 and "identical terms" as meaning that each partner's interest must be based on the same price per percentage of interest in the Partnership. His opinion, though, was that Mr. Paliotta's interpretation, as applied in this case, is "inherently unfair" to both partners.

Mr. Payne also disagreed with the value the Trustee placed on each partner's interest, and disagreed with the method used for valuation. He believed that the Trustee should have investigated more thoroughly regarding the value of the various interests. According to Mr. Payne, the Trustee should have estimated how long the general partner might be expected to hold and control the Partnership property, what management fees it might be entitled to, and what costs it had incurred in setting a value for the general partner's interest. He also testified that the Trustee should have consulted with Mr. Bailey so that they could have mutually determined and agreed upon the value of the general partner's interest in the Partnership. Mr. Payne's opinion was that the Trustee's offer under § 16.1 was not fair, reasonable, nor in line with what a third party in an arms-length relationship would offer. He believed that the offer would be rejected, with the result being that the Partnership would be dissolved. He did state, however, that it was possible for the Partnership to continue after the withdrawal of a partner if there continues to be an economic purpose for the Partnership. This is because § 16.1 is consistent with another provision, § 14, that allows for the transfer of interests between partners, and for the addition of new partners, as either a successor general partner or a substituted limited partner.

Admittedly, an appraisal or valuation report such as the one he prepared is not

12

required under §§ 16.1 or 16.2. However, Mr. Payne stated that a good faith offer should be based upon such a valuation. He stated that the Trustee's offer of $ 3,000 for the general partner's interest was well below what that interest is actually worth, because it is much less than what would be paid for that interest under other liquidation or dissolution provisions of the Limited Partnership Agreement. Based upon his appraisal, Mr. Payne believed the fair market value of the general partner's one percent interest to be $15,000. Similarly, the Trustee's $297,000 valuation of the limited partner's interest was well above what Mr. Payne found that interest to be worth. His appraisal set the fair market value of the limited partner's 99% interest at $ 95,000.

Mr. Payne's Appraisal Report included several different methods of evaluating the respective interests of the partners. Ultimately, he concluded that the "Discounted Future Return" valuation method was the most reliable and relevant in valuing both partners' interests. When estimating the fair market value of the general partner's interest Mr. Payne explained that he considered the capital contribution of the partners to the Partnership, and the ability of the general partner to recover that contribution in an event other than dissolution. He also considered the general partner's right to receive managerial fees, although he admitted that the general partner has never been paid any such fees, as well as potential income of the Partnership.

As for the limited partner, Mr. Payne noted that the highest possible valuation of its interest would be $ 107,000, utilizing the Net Asset value, which is based upon a valuation of the real estate owned by the Partnership of $ 225,500.[4] However, he thought it unlikely

---

[4]His valuation of the real estate is less than that listed in § 7.1 of the Agreement of $ 235,816, because he believed the value in the Agreement was inflated.

Case 06-08165    Doc 73    Filed 05/30/08    Entered 05/30/08 14:56:05    Desc Main
Document    Page 13 of 23

that an arms-length third party purchaser would pay more than $ 70,000 for the limited partner's interest because such purchasers would likely consider the lack of current cash flow and an extended holding period of at least ten (10) years based upon the life expectancy of Bill and Barbara Bailey. He chose the $ 95,000 value for the limited partner's interest based upon the present value of future expected income. Mr. Payne did not place any value on a partner's rights under § 16.1 because he did not believe that section made economic sense.

The last expert witness who testified was Mr. Cletis Glasson, vice-president and loan officer at a branch of the McCurtain County National Bank.[5] He testified as an expert regarding the value of the real property owned by the Partnership. Some of the property is located along a highway. He estimated the value of the 200 acres to be in a range of $1,000 to $2000 an acre, with the highway frontage acres being valued at the high end of that range. He based this appraisal on approximately 15 to 20 comparable sales, although he did not personally view or inspect those properties. He noted that the value of property in Broken Bow (where the Partnership property is located) has increased substantially since 1994. He only valued the land, not the Partnership. McCurtain County National Bank does not hold the mortgage on the Debtors' home.

<u>CONCLUSIONS OF LAW</u>

As has previously been determined by this Court and by the BAP in an earlier appeal of the companion adversary proceeding in this bankruptcy, Mrs. Baldwin's partnership interests became property of her bankruptcy estate at the commencement of

---

[5]McCurtain County National Bank is a major creditor in the Baldwins' bankruptcy.

Case 06-08165    Doc 73    Filed 05/30/08    Entered 05/30/08 14:56:05    Desc Main
Document    Page 14 of 23

the bankruptcy.  *See Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1197 (10th Cir. 2002) (property interests in bankruptcy are defined by state law, but federal law determines the extent those interests are property of the bankruptcy estate); *Samson v. Prokopf (In re Smith)*, 185 B.R. 285 (Bankr. S.D. Ill. 1995) (rights of limited partner who is debtor in bankruptcy become property of the bankruptcy estate).  The Trustee then succeeded to her rights and may assert whatever rights Mrs. Baldwin has as a partner under the Limited Partnership Agreement and state law.  11 U.S.C. § 541(a)(1).  The parties have stipulated to this.  Further, the Response Letter indicates that the Defendants did not consider the Trustee to be a third party offering to buy an interest in the Partnership.

The BAP has determined that the Trustee, as successor in interest to Mrs. Baldwin's rights in the Partnership, does not possess any power or right to dissolve or liquidate the Partnership.  *Miller*, 2006 WL 2034217, at *4.  The rights of the Trustee can certainly be no greater nor lesser than those of Mrs. Baldwin.  However, the BAP noted that the Trustee could exercise rights set forth in §§ 14 and 16 of the Limited Partnership Agreement.  *Id.* at *2 n6, *4. These sections involve the withdrawal of a partner from the Partnership.  The Trustee has attempted to follow the terms for withdrawal as set forth in § 16 by sending the Withdrawal Letter.  The issues for this Court to determine are the proper interpretation of this paragraph and whether the Trustee's notice of withdrawal and offer of purchase or sale to the general partner was valid pursuant to the terms of the Limited Partnership Agreement.

The issues before this Court involve the interpretation of the Limited Partnership Agreement, and Mrs. Baldwin's interest in the Partnership.  State law determines the

15

nature of a debtor's interest in property. *Ogden*, 314 F.3d at 1197. Partnership agreements are contracts governed by Oklahoma laws regarding contract interpretation. *See e.g. Heskett v. Heskett*, 1995 OK CIV APP 52, 896 P.2d 1200. Where an agreement has been reduced to writing, the intention of the parties, as well as the interpretation of the agreement's terms, are to be ascertained from the writing alone. Okla. Stat. tit. 15, § 155. The "language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Okla. Stat. tit. 15, § 154. Where the language is clear and unambiguous, the court is to interpret it as a matter of law. *Corbett v. Combined Communications, Corp.*, 1982 OK 135, ¶ 5, 654 P.2d 616, 617.

The parties contend that the terms of the Limited Partnership Agreement are not ambiguous, but they urge different interpretations of a phrase in the withdrawal provision found in § 16.1. That phrase is "identical terms." Section 16 allows any partner to withdraw from the Partnership by offering to buy the interest of the other partner or sell its interest to the other partner. This section provides as follows:

16. <u>Withdrawal of a Partner</u>.

16.1 <u>Notice of Withdrawal</u>. A Partner may withdraw from the Partnership after delivering written notice of his intention to withdraw to the other Partner at least thirty (30) days prior to the proposed date of withdrawal (for the purposes of this Section 16, a Partner who has given written notice of his intention to withdraw shall be called the "Withdrawing Partner" and the other Partner shall be called the "Remaining Partner"). Such notice of withdrawal shall include an offer by the Withdrawing Partner to purchase the interest of the Remaining Partner (the "purchase offer") on stated terms and for a stated amount and, in the alternative, to sell the Withdrawing Partner's interest (the "sale offer") on identical terms.

16.2 <u>Option of Remaining Partner</u>. For thirty (30) days after the delivery of such notice of withdrawal, the Remaining Partner shall have the option to accept the purchase offer of [*sic*] the sale offer, or serve notice that the Partnership be terminated and liquidated in accordance with Section 15.3

16

herein.  Failure by the Remaining Partner to serve notice accepting the purchase offer or sale offer of terminating the Partnership within said thirty (30) day period shall be deemed an affirmative acceptance of the purchase offer, and the Withdrawing partner shall have the exclusive right to purchase the interest of the Remaining Partner as stated in the purchase offer.

The Defendants argue that this section and the phrase "identical terms" must be interpreted in light of the original purpose and intent of the Limited Partnership Agreement as a part of the estate plan for the Baileys, and interpreted in a way that is consistent with all parts of the Limited Partnership Agreement.  They do not believe that the section actually gives a limited partner the right to withdraw.  Defendants interpret § 16 and "identical terms" to mean that the Trustee, as successor in interest to Mrs. Baldwin's limited partnership interest, has no right to withdraw, no right to purchase the General Partner's 1% interest for $3,000, and no right to force dissolution of the Partnership.  Defendants and Mr. Teague urge the Court to interpret the phrase "identical terms" to mean identical total price, with the result being that the Trustee could only withdraw  by either selling his interest to the General Partner or buying the General Partner's interest for the same amount.  Defendant's interpretation is that since the Trustee's offer to purchase the Trust's 1% interest was $ 3,000, his offer to sell Mrs. Baldwin's 99% limited partnership interest must also be for $ 3,000.  In other words, both interests must be  valued at the same total price for there to be an effective withdrawal under the terms of § 16.1.  Defendants also argue that the Trustee's offer to purchase the General Partner's interest for $3,000 is inherently unfair, and does not take into account the differences between a general partner and a limited partner, such as the rights of the General Partner to control and manage the Partnership, and the strict limitations on the powers and rights of the limited partner.  The

Case 06-08165    Doc 73    Filed 05/30/08    Entered 05/30/08 14:56:05    Desc Main
                    Document      Page 17 of 23

most the Trustee should ever receive upon withdrawal under this section would be Mrs. Baldwin's capital contribution, not $ 3,000 per percentage point of partnership interest.

The Trustee argues that neither § 16 nor "identical terms" is ambiguous. He states that § 16.1 simply means that offers to purchase and sell must be based upon the same terms, including the same price per percentage point of partnership interest and the same proposed payment terms. Based upon the Trustee's valuation of the Partnership at $300,000, his Notice of Withdrawal included a purchase/sale offer of $3,000 per percentage point of interest. Mrs. Baldwin's limited partnership interest of 99% equals $297,000, and the general partner's 1% interest is $3,000. His offer of withdrawal included an offer to purchase Defendant Bailey Trust's 1% interest for $3,000, payable immediately in cash. Alternatively, the Trustee offered to sell the 99% limited partnership interest on "identical terms" as his offer to purchase, using the identical term of $3,000 per each percentage of interest, and the identical term that it be payable immediately in cash.

"Identical terms" is not specifically defined in the Limited Partnership Agreement, however, this does not mean that the phrase is ambiguous. Words in a contract are to be interpreted and understood in their "ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage . . . ." Okla. Stat. tit. 15, § 160. When "identical terms" is interpreted in its ordinary and popular sense, it is clear and unambiguous. The phrase simply means that the Withdrawing Partner's terms for purchase or sale must be functionally identical. The offer to sell must be made based upon the same price per percentage point of partnership interest as was used in the Withdrawing Partner's offer to purchase the interest of the Remaining Partner, as well as the same payment terms. The

Case 06-08165    Doc 73    Filed 05/30/08    Entered 05/30/08 14:56:05    Desc Main
Document    Page 18 of 23

precise wording is that the offer to purchase shall be "on stated terms and for a stated amount . . . ," while the offer to sell is to be "on identical terms." The latter phrase does not add, "and for the identical total amount." It simply says that the terms of purchase or sale must be identical, not that the offers yield an identical total price. The terms offered by the Trustee for both the purchase of the General Partner's interest or the sale of his Limited Partner interest were identical: the same $3,000 value per percentage point of partnership interest, and the same term that the purchase or sales price be paid immediately in cash. The fact that the offer to purchase may yield a different total price than an offer to sell is expected, and does not mean that the offer was invalid for failure to be on "identical terms."

This Court cannot adopt the strained reading of § 16 as Defendants urge. A party to an unambiguous written contract is estopped to insist upon an unnatural construction in order to support a construction more favorable to itself." *Golden v. Golden*, 1932 OK 76, 8 P.2d 42 . The section is titled "<u>Withdrawal of a Partner</u>." Clearly, the Limited Partnership Agreement intended that partners would be able to withdraw, otherwise this section would not have been included. To interpret "identical terms" as the Defendants urge would result in the same unfairness that the Defendants complain of regarding the Trustee's pro rata valuation of each partner's interest in the Partnership. It would be inherently unfair to require the Trustee to accept the same amount for his 99% interest in the Partnership as he would be required to pay for the General Partner's 1% interest. Their interests, even though dissimilar in right to control and manage the Partnership, are still based upon the same underlying assets and potential income. The Court cannot impose additional requirements onto a notice of withdrawal and offer to purchase and sell as the Defendants urge. The Court is constrained by the language of the agreement. There is no provision

19

in this section requiring that the offer to purchase or sell be based upon an appraisal, upon negotiations prior to the offer, upon a price and terms deemed fair and acceptable to the Remaining Partner, upon a valuation other than pro rata such as capital contribution or class of ownership interest, or upon some hope of Mr. and Mrs. Bailey that no partner would ever choose to exercise its rights under this section. Instead, the only restriction here is that the offer of withdrawal be on "identical terms."

The Defendants also argue that the practical effect of allowing the Trustee to withdraw is to allow him to effect a liquidation or dissolution of the Partnership, a power that the limited partner does not possess. However, since inception, there have been but two partners in this Partnership. Therefore, the inclusion of § 16.1 clearly contemplated that one of two partners could withdraw, leaving but one remaining partner. A liquidation or dissolution is not the direct result of a partner's withdrawal under § 16. By the express terms of § 16.2, liquidation is simply an option available to the Remaining Partner should it choose not to accept an offer to purchase its partnership interest nor choose to buy the other partner's interest. Regardless of whether one considers liquidation under § 16.2 a direct or indirect result of a notice of withdrawal under § 16.1, the fact remains that this section specifically allows for withdrawal and possible liquidation. The Court must follow the written terms of the Limited Partnership Agreement. A notice of withdrawal is not the equivalent of a forced dissolution of the Partnership nor liquidation of its assets.

With this reading of § 16, every part of the Limited Partnership Agreement can be given effect, as required by Oklahoma law. Okla. Stat. tit. 15, § 157. The Court's reading of "identical terms" is consistent with other sections of the Limited Partnership Agreement, and, thus, the agreement as a whole. Other sections that provide for a pro-rata value of

20

partnership interests include § 15.3.4 regarding the distribution of assets in a dissolution, § 11.3 regarding drawing accounts, and § 8.1 regarding allocations for income, deductions and credits. Section 6.2 defines "Partner" to be any one of the partners, either general or limited. Section 16.1 provides that any "Partner" may withdraw, which includes a limited partner. Sections 7.1 and 7.7 are unaffected by this Court's decision. Those sections simply provide that the General Partner has the sole discretion to determine whether cash distributions will be made each year from Distributable Cash Flow, and specify limitations on a partner's right to withdraw a capital contribution. They do not restrict a partner's power to withdraw under § 16, nor specify how a partner's interest is to be valued upon withdrawal under § 16.

The Defendants correctly argue that Mrs. Baldwin's, and thus, the Trustee's rights as a limited partner under the Limited Partnership Agreement are extremely limited. The limited partner has no right to manage the Partnership, to sell or demand distribution of Partnership property, or to dissolve the Partnership, other than according to the terms of the agreement. However, as noted by the BAP in its opinion filed July 11, 2006, § 16 does afford Mrs. Baldwin the right to withdraw from the Partnership. This is what the Trustee has attempted to do by extending an offer to buy the 1% interest of the general partner or sell his 99% interest as a limited partner to the general partner.

Although there is no need to resort to extrinsic evidence to ascertain the meaning of the Limited Partnership Agreement because its language is clear and explicit, the Court notes that two of the three experts who offered opinions regarding the interpretation of § 16 agree with this Court's reading of the section. Mr. Paliotta, the Trustee's expert witness, described this section as a standard buy/sell provision found in limited partnership

21

agreements, and stated that the requirement of "identical terms" avoids the necessity of obtaining a third party appraisal. The phrase means that any partner, either general or limited, may withdraw by making a fair offer that includes the same price per ownership interest. A fair offer is forced because of the requirement that the buy/sell offers must be on "identical terms."

Mr. Payne, the Defendants' expert regarding valuation of the Partnership, testified that he could not disagree with Mr. Palimino's legal conclusion regarding the interpretation of § 16.1 and the phrase "identical terms," but he objected to the Trustee's offer under that section because he believed it to be "inherently unfair" in value, and not in accordance with what a third party would offer for an interest in the Partnership in an arms-length transaction. He agreed, however, that an appraisal was not required before an offer of withdrawal could be made under § 16.1.

The drafter of the agreement, Mr. Teague, was the only expert who interpreted "identical terms" to mean identical price regardless of the percentage of ownership interest. Essentially, his testimony was that it was never his nor Mr. Bailey's intent nor expectation that § 16 would be used or that Mrs. Baldwin would ever want to withdraw from the Partnership. Both Mr. Teague and Mr. Bailey admitted that neither divorce nor bankruptcy was considered in the drafting of the Limited Partnership Agreement, only estate planning and tax minimization. The Court notes that if there are uncertainties in a contract, the language should be construed most strictly against the party who caused the uncertainty. Okla. Stat. tit. 15, § 170. In this case, that party is Mr. Bailey, and the drafter of the Limited Partnership Agreement, Mr. Teague.

Accordingly, it is this Court's decision that the Trustee has given a valid notice of

Case 06-08165    Doc 73    Filed 05/30/08    Entered 05/30/08 14:56:05    Desc Main
Document    Page 22 of 23

withdrawal according to the terms of the Limited Partnership Agreement, including a valid offer to purchase the interest of the Defendant General Partner, and a valid offer to sell the interest of the Trustee, as successor in interest to the Limited Partner, Mrs. Baldwin. Having therefore upheld the validity of § 16 of the Limited Partnership Agreement, the Trustee's right to withdraw from the Bill and Carolyn Limited Partnership pursuant to § 16 of the Limited Partnership Agreement, as well as the validity of the Trustee's Withdrawal Letter pursuant to that section, the Court finds that the Defendants shall have thirty-one (31) days from the entry of this Court's decision within which to respond to the Trustee's Withdrawal Letter, pursuant to the terms of § 16 and in accordance with this Court's Opinion. The Court directs the Defendants to respond to the Trustee's Withdrawal Letter by accepting either the Trustee's purchase offer or the Trustee's sale offer, or by serving notice that the Partnership shall be terminated and liquidated in accordance with § 15.3, and Defendants' response shall be in accordance with the terms of § 16 of the Limited Partnership Agreement and this Court's Opinion.

###

23